## Kirkpatrick *against* Black.

If a judgment creditor levy upon and sell a whole tract of land, instead of a part of it, which he had previously agreed to convey to his debtor, in consideration of his making the settlement, he thereby defeats his own title to the whole tract and the sheriff's vendee acquires a good title to it.

ERROR to the common pleas of *Butler* county.

David Kirkpatrick and others, heirs at law of John Kirkpatrick, deceased, against John Black.

This ejectment was brought to recover the possession of 400 acres of land, situate in Mercer township. The plaintiffs claimed the land in dispute as the heirs of the late John Kirkpatrick, and gave in evidence articles of agreement between John Kirkpatrick and Richard Jarvis, dated March 20, 1797, by which Jarvis covenanted to make the improvements and settlement on the tract required by the act of April 3, 1792, and Kirkpatick covenanted to procure the title, and to pay the purchase-money and patenting fees to the state. Jarvis to have 100 acres for making the settlement.

The defendant admits the plaintiffs to be the heirs of John Kirkpatrick.

Hugh Lee, Esq, John Murray, Esq. and Henry Evans, who were examined as witnesses, proved that the improvements were commenced by Jarvis in 1797, and that there was a double cabin on it, from 10 to 15 acres cleared, and that he lived on it until 1807, that it was vacant from the time Jarvis left it until John Black, Sen. took possession of it in 1817. Hugh Lee proved, that sometime after John Black had purchased at sheriff's sale, he thinks before he took possession, that he showed him the sheriff's deed, and asked him whether he was safe to go on the ground and build the mill. Left the deed with witness, who afterwards told him, that under the circumstances he (the witness) would not build the mill; thought that Black would step into Jarvis's shoes. Black said he knew there was an article, but he had bought the whole tract, and considered that he was purchasing the whole tract.

The plaintiffs gave in evidence the record of a judgment in the court of common pleas of Westmoreland county.

John Kirkpatrick *v.* Elizabeth Jarvis, executrix of the last will and testament of Richard Jarvis, deceased. No. 64, August term 1810. Judgment rendered August 9, 1810. *Fieri facias*, No. 88, August 1810. Returned "*nulla bona.*" *Testatum fieri facias* to Butler county. No. 9, November term 1810. Returned "*nulla bona.*" *Alias testatum fieri facias* to Butler county.

[Kirkpatrick v. Black.]

No. 39, February 1811. Returned, "levied on 400 acres of land, more or less, situate in Mercer township, Butler county, adjoining on the east lands formerly owned by John Jorden, now the property of John Kirkpatrick, on the west by land of Patrick M'Anally, 20 acres cleared, two small cabins, and a stable erected thereon. Inquisition held and condemnation, April 16, 1811." . *Venditioni exponas* to the sheriff of Butler county, No. 28, August 1817. Returned by the sheriff, August 6, 1817, sold to John Black for 31 dollars.

The plaintiffs tendered to the defendant, and paid into court, 340 dollars 78 cents, the amount of expenses and patenting money; and gave in evidence a survey made by Thomas H. Lyon, Esq., deputy surveyor, on the 8th of June 1837, of the tract of land containing 412 acres, 61 perches, and allowance made at the instance of David Kirkpatrick.

On the part of the defendants, the existence and loss of the deed from James M'Kee, Esq., sheriff of Butler county, to John Black, for the land in dispute, was proved by the testimony of Hugh Lee, Esq., John Black, Jr. and William Purviance, Esq.

The record of the acknowledgment of this deed by James M'Kee, Esq., sheriff, was read in evidence; the improvements made on the land since the purchase by Black, were proved to be about 100 acres cleared, a grist and saw-mill, two cabin dwelling-houses, a frame dwelling-house, and a stone dwelling-house, which could not have been made for 2000 dollars. The duplicates, containing the assessment of this tract with county tax to John Black, from 1817 to 1837, were in evidence. Also a patent from the commonwealth to John Black, for 382 acres 149 perches of land, with the usual allowance, dated April 2, 1832.

The plaintiffs propounded the following points, upon which they requested the court to charge the jury.

1. That the agreement between John Kirkpatrick and Richard Jarvis is binding on both parties, and if Jarvis had completed the settlement and taken out a patent, it would have enured to the benefit of Kirkpatrick to the extent of 300 acres, upon his paying the sum stipulated in the agreement between them.

2. That if Jarvis completed the settlement and improvement required by the act of 1792, he was entitled to a patent for the tract upon payment of the purchase-money and patenting fees to the commonwealth, which patent would enure to the benefit of Kirkpatrick, as stated in the plaintiff's first point.

3. That if Black entered upon the tract in controversy, in virtue of the purchase at sheriff's sale, he has no claim for any larger portion of the tract, than he would have had, if he had purchased directly from Jarvis, and he derives no other claim from his patent, than Jarvis would have had, if it had been issued in his name. In other words, Black so entering, is a trustee for Kirkpatrick to the

extent of the quantity of land that Kirkpatrick would have been entitled to under his agreement with Jarvis.

4. That Jarvis's right to the land was an inchoate title, charged with a trust to Kirkpatrick, which trust would have continued after the patent had been taken out; that Black, by his purchase at sheriff's sale, acquired the right of Jarvis to the land, subject to the same rights and equities in favour of Kirkpatrick, with which it was affected in the hands of Jarvis himself, and that the present plaintiffs are entited to recover upon condition of refunding him the costs and expense he was at in surveying and procuring the patent.

5. That if the jury believe the testimony of Hugh Lee, Black knew at the time of his purchase the interest which Richard Jarvis had in the land, and the interest which Kirkpatrick had in the same, and his purchase was subject to the terms of the articles.

The court answered the first and second points in the affirmative.

In answer to the third point, the court instructed the jury, that Kirkpatrick having, on his own judgment against Jarvis, levied upon the tract of land in controversy as the property of Jarvis, and sold it as such, that Black having entered upon it in pursuance of that purchase, claiming the whole tract, without any notice by the terms of the levy or sale, that Kirkpatrick claimed a portion of the tract as his own, and having resided on it for twenty years, made very valuable improvements, it would be unjust and inequitable that the plaintiff should recover under such circumstances.

The fourth point is substantially answered in the answer to the third point.

Fifth point. The testimony of Hugh Lee, Esq. is, that Black asked his opinion after he had purchased, whether he would be safe in going on to build the mill, and that the witness gave it as his opinion, that he would be in the same situation as Jarvis, and that he said he knew there was an article, but that he had bought the whole tract, and considered at the time of the purchase that he was buying the whole tract.

There is nothing in his asking the opinion of a neighbour, or his saying that he knew there was an article, that would amount to the same as if notice had been given to him by Kirkpatrick, that it was merely the interest or claim of Jarvis that he was selling, and that after nearly twenty years had elapsed since the purchase and possession taken, and valuable improvements made, under the belief that the whole tract was purchased by him, the plaintiffs are not entitled to recover.

*Shaler*, for plaintiff in error, cited 11 *Serg. & Rawle* 392; 2 *Watts* 459, to establish the position, that nothing was sold but the debtor's interest in the land.

[Kirkpatrick v. Black.]

*Purviance,* for defendant in error, cited 7 *Watts* 163; 9 *Cowan* 271; 1 *Johns. Dig.* 411; 2 *Penn. Rep.* 9.

The opinion of the court was delivered by

GIBSON, C. J.—When not transcending the mandate of his writ, the sheriff may be considered in some degree as the creditor's agent. Thus, payment to him on the foot of a *fieri facias,* discharges the debt, though the command is to get the money only by a sale of the debtor's goods; and the creditor's further recourse is to the sheriff. As to levy, time, place, and circumstances, the doing of execution is generally under the superintendence of the judgment creditor; and the sheriff acts, in these matters, so invariably by direction of the attorney, that in whatever involves an exercise of discretion based on a knowledge of particular facts, a presumption may be said to arise from the usual and natural course of such transactions, that he acted in conformity to the creditor's wishes. In particular cases however, such as those of conflicting executions in his hands at the same time, he acts at his peril and of his own head. But in respect to no particular of his duty, does the presumption of special instruction arise with greater force, than in respect to a levy of land. The sheriff usually knows absolutely nothing about the description and quantity, or about the title; and he returns his levy according to the facts given to him by the person who sued out the execution. The creditor is the controller of it; he applies it in the way most conducive to his interest; the sheriff is bound to respect his instructions; and is not the sheriff's act, done pursuant to his command, also his act? The conclusion will not be disputed, if the fact of instruction be conceded; but it may be said that the presumption of it, being a natural one and going for just what it is worth in the estimation of a jury, is not a ground of legal inference. Granted. But if the judgment creditor has caused his own land to be levied and sold, even by inadvertence, who ought to bear the consequences of it? Evidently he whose act, however unintentionally, occasioned it, and it is impossible to say the efficient cause of the mischief, in this instance, was not the act of him who sustained the double character of execution creditor and part owner. His debtor was in the ostensible possession of a tract of four hundred acres—the statutory allowance of one who settles for his own use—but beneficially entitled only to a fourth of it, for having performed the condition of settlement for the creditor as a warrantee. Now the whole of this tract was levied on as the absolute property of the debtor; and to prevent misconception from a measure so fraught with it, it was the duty of the creditor, informed as he was of the circumstances, to furnish the sheriff with a particular description of the interest directed to be levied. It will not be said the sheriff might have disregarded an order to insert it. Had he done so, the court would have set aside the levy; and for the same reason the creditor ought to have had the error of the

[Kirkpatrick v. Black.]

sheriff, if his it was, corrected in this instance; instead of which he did the very reverse. On the basis of a deceptive levy whose falsehood stared him in the face, he sued out a *venditioni exponas,* and thus, whatever it was originally, made the act of the sheriff his own. Thus proceeding on a levy of the whole tract, and knowing, as he did, the debtor to be entitled only to a part of it, he was guilty of a constructive fraud depending, not on a natural presumption, but on facts of record whose legal consequences are determinable by the court: and what is the difference between such a judgment creditor and a by-stander who conceals his title? The one is present at the instant of the sale; the other, with knowledge of the erroneous pretension on which it is based, urges it on; but each is passive when he ought to act, and each is to be postponed to a purchaser who would else be a loser by another's supineness. On that head, the direction was entirely proper; nor in regard to the purchaser's supposed knowledge of the truth of the case, was it less so. The creditor might have had his motives for letting the whole be sold together; and it was not the purchaser's business to inquire into them; he had no reason to suppose, the creditor would else be so improvident as to propose a sale of his own estate. Such a sale, however, he did propose; and the purchaser, having the assurance of the levy and *venditioni,* that such was the fact, might securely bid to the value.

Judgment affirmed.